**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**JONATHAN ROGOFF,**

      **Plaintiff,**

**vs.**                                            **No. CIV-10-1041 LAM**

**MICHAEL J. ASTRUE, Commissioner**
**of the Social Security Administration,**

      **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision (Doc. 19)* and *Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision (Doc. 20)* (hereinafter, collectively "Motion"), filed July 8, 2011. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See Documents 4* and *6.* The Court has reviewed Plaintiff's motion, *Defendant's Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 24)*, filed August 22, 2011, Plaintiff's *Reply Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision (Doc. 25)*, filed August 26, 2011, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED**, and the decision of the Commissioner of

Social Security (hereinafter "Commissioner") be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

## I.  Procedural History

On July 11, 2007, Plaintiff Jonathan L. Rogoff filed applications for social security disability insurance, alleging a disability since February 26, 2007.  (*R. at 123-31.*)  His applications were denied at the initial level on September 7, 2007 (*R. at 80*), and at the reconsideration level on April 16, 2008 (*R. at 87–89*).  Plaintiff requested a hearing (*see R. at 90-91*), and on February 12, 2010, Administrative Law Judge (hereinafter "ALJ"), Barry Robinson, conducted a hearing (*R. at 39-77*).  Plaintiff was present and testified at the hearing (*R. at 43–70*), and he was represented by counsel (*R. at 42*).  Vocational expert (hereinafter "VE"), Dan Moriarty,[1] was also present and testified at the hearing.  (*R. at 41, 70-77.*)

On March 31, 2010, the ALJ issued his decision, finding that Plaintiff had not become disabled on or before his Date Last Insured[2] (hereinafter "DLI") of September 30, 2007.  (*R. at 24–34.*)  On April 14, 2010, Plaintiff requested that the Appeals Council review the ALJ's decision.  (*R. at 121.*)  In July and August 2010, Plaintiff submitted additional medical and psychological evidence to the Appeals Council.  (*R. at 514-26, 7-17.*)  The Appeals Council issued two decisions denying Plaintiff's request for review -- the first was issued on September 1, 2010 (*R. at 4-6*), and the second was issued on November 9, 2010, in which the Appeals Council made

---

[1]The VE's name is spelled phonetically as "Moriarti" in the hearing transcript, but his resume shows that his name is spelled "Moriarty."  (*R. at 118.*)

[2]Plaintiff "must establish disability on or before the Date Last Insured in order to be entitled to a period of disability and disability insurance benefits." (*R. at 27*); *see also* 20 C.F.R. § 404.131.

the additionally-submitted medical and psychological evidence part of the record (*R. at 1-3*). These denials made the ALJ's decision the final decision of the Commissioner. On November 4, 2010, Plaintiff filed his complaint in this case. [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try

the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).

## III. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the

claimant is able to perform other work in the national economy, considering his residual functional capacity (RFC), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on November 1, 1957 (*R. at 43-44*), and was 49 years old at the time of his DLI (*R. at 32*). Plaintiff alleges a disability due to diabetes, neuropathy, hypertension, high cholesterol, and acid reflux. (*R. at 139.*) Plaintiff completed two years of college and has past work experience as a computer-aided draftsman, application engineer, design engineer, cashier, motorcycle salesman, clothing salesman, stocker, and cleaner. (*R. at 71-72, 140, 159.*)

Plaintiff's medical records document treatment from Lovelace Medical Center, Lovelace Sandin Health System, and Albuquerque Health Partners (*R. at 200-319, 323-57, 360-394, 401-97, 504-09*). Plaintiff's medical records include: a Case Analysis, dated April 15, 2008, by David P. Green, M.D. (*R. at 320*); a Medical Assessment Of Ability To Do Work-Related Activities (Physical), dated March 13, 2009, by Ronald E. Sautter, M.D. (*R. at 397*); a Medical Assessment Of Ability To Do Work-Related Activities (Non-Physical), dated March 13, 2009, by Ronald E. Sautter, M.D. (*R. at 399*); and a Psychological Evaluation, dated June 10, 2010, by Clifford O. Morgan (*R. at 515-25*). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that, even though Plaintiff worked after his alleged disability onset date, "this work activity did not rise to the level of substantial gainful activity." (*R. at 29.*) At step two, the ALJ found Plaintiff had the following severe impairments: "diabetes mellitus with neuropathy of the hands and feet." *Id.* At the third step,

the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1.  (*R. at 30*.)  In support of this finding, the ALJ stated that Plaintiff's "diabetes does not meet Listing 9.08 which describes diabetes complicated by ketoacidosis for type 1, diabetic retinopathy or peripheral neuropathy resulting in sustained disturbance of gait and station or of gross and dexterous movements." *Id.*  The ALJ further stated that Plaintiff's "diabetic neuropathy was described as 'mild' prior to the date last insured." *Id.*

Before step four, the ALJ determined that, through Plaintiff's DLI, Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. *Id.*  The ALJ stated that Plaintiff "can occasionally climb ramps and stairs, can occasionally stoop but can never climb ladders ropes or scaffolds[, and] can also occasionally hold objects in his hands bilaterally and occasionally perform gross and fine manipulation bilaterally." *Id.*  The ALJ further stated that Plaintiff "retains the ability to perform substantially all of the requirements of light work." *Id.*  In support of his RFC finding, the ALJ stated that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the RFC finding.  (*R. at 31*.)  The ALJ noted that "there are no treating source opinions in the record for the period prior to the [DLI]."  (*R. at 32*.)

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. *Id.*  At the fifth and final step, the ALJ found that, based on the VE's testimony, and considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, such as rental clerk, shipping

clerk, or greeter, all of which are "light, unskilled" jobs. (*R. at 33.*) The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*R. at 34.*)

## V. Analysis

Plaintiff contends that the ALJ made the following three errors in his decision: (1) the ALJ failed to develop the record as to Plaintiff's mental impairment and erred by failing to obtain a Consultative Psychological Evaluation (hereinafter, "CPE") as was requested by Plaintiff's counsel; (2) the ALJ failed to evaluate the medical opinion of Plaintiff's treating physician; and (3) the ALJ's hypothetical questioning of the VE did not include all of Plaintiff's functional limitations/restrictions. [*Doc. 20* at 4-15]. Plaintiff asks the Court to reverse the ALJ's decision or to remand for a rehearing. *Id.* at 15. Defendant disputes Plaintiff's contentions and argues that the ALJ's decision should be affirmed because the ALJ fully developed the record, properly evaluated the medical evidence and opinions, and posed a proper hypothetical question to the VE. [*Doc. 24* at 4-12].

### A. The ALJ's Finding Regarding Plaintiff's Alleged Mental Impairment

Plaintiff contends that the ALJ erred by failing to develop the record regarding Plaintiff's alleged mental impairment and failing to obtain a CPE as requested by Plaintiff's counsel. [*Doc. 20* at 4-10]. Plaintiff states that he requested that the ALJ obtain a CPE because Plaintiff had a long history of depression and anxiety, which were documented by his treating sources, but the ALJ failed to do so. *Id.* at 4-5, and (*R. at 503*). Plaintiff contends that the medical evidence in the record sets forth a "reasonable probability" that Plaintiff's depression and anxiety were severe enough to

constitute disabilities, and, therefore, the ALJ's failure to obtain a CPE was legal error. [*Doc. 20* at 7] (citing *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006)).

In response, Defendant states that the ALJ fully developed the record regarding Plaintiff's alleged mental impairment, and the record in this case shows that the ALJ did not err in denying Plaintiff's request for a CPE. [*Doc. 24* at 4]. Defendant states that the ALJ brought up Plaintiff's counsel's request for a CPE at the hearing and told counsel that he did not believe a CPE would be helpful in evaluating Plaintiff's condition because Plaintiff's insured status expired two-and-a-half years earlier, and Defendant contends that Plaintiff's counsel did not object to these statements by the ALJ. *Id.* at 5 (citing (*R. at 43*)). Defendant further contends that the evidence submitted by Plaintiff's counsel for a CPE did not support a finding that Plaintiff had a severe mental impairment at the time of Plaintiff's DLI. [*Doc. 24* at 5-6]. Defendant states the record does not show that Plaintiff suffered from anxiety or depression that was not controlled with medication, and that Plaintiff did not allege anxiety or depression as impairments when he applied for benefits. *Id.* at 6-8. Finally, Defendant states that the Appeals Council properly considered the report Plaintiff submitted from Dr. Morgan's June 2010 psychological evaluation and found that it did not establish that Plaintiff had a severe or disabling mental impairment at the time of Plaintiff's DLI. *Id.* at 8-9.

The ALJ "has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). There are three instances when such an examination is required: (1) "where there is a direct conflict in the medical evidence;" (2) "where the medical evidence in the record is inconclusive;" and (3) "where additional tests are required to explain a diagnosis already contained in the record." *Barrett v. Astrue*, No. 08-2300, 349 Fed.

Appx. 481, 486, 2009 WL 2400267 (10th Cir. Aug. 6, 2009) (unpublished) (quoting *Hawkins*, 113 F.3d at 1166). "[T]he ALJ should order a consultative exam when evidence in the record establishes a reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169; *see also Madrid v. Barnhart*, 447 F.3d 788, 791 (10th Cir. 2006). The Tenth Circuit has explained that when determining whether an ALJ should have ordered a consultative examination, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167 (citation omitted).

The Court finds that the evidence in the record suggests the existence of a mental impairment, which could have a material impact on the disability decision, so the ALJ should have developed the record to ascertain whether this mental impairment limited Plaintiff's ability to work or the range of jobs available to him.

The Court finds that Defendant's contention that the record does not support a finding that the ALJ should have ordered a CPE is without merit. [*Doc. 24* at 5-7]. Plaintiff's medical records indicate that Plaintiff suffered from depression and anxiety dating back to July and November of 2006, prior to his DLI, and that his depression and anxiety were present despite Plaintiff's use of Alprozolam.[3]  *See* (*R. at 228, 257-58, 277.*)  In addition, Plaintiff's medical records dated November 15, 2006, note that "the anxiety and depression are still a big part of [Plaintiff's] life." (*R. at 258.*)  Furthermore, at the February 12, 2010 hearing, Plaintiff told the ALJ that he had

---

[3]Alprazolam is used to treat anxiety and panic disorders, as well as depression.  *See* www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000807/ (site last visited November 3, 2011).

9

suffered from depression for "the last three to four years," had "suicidal thoughts all day long, every day," and that he had been taking medication for his depression and anxiety for the last ten to twenty years. (*R. at 58.*) Finally, the record includes a diagnosis by Dr. Morgan that Plaintiff suffers from Major Depressive Disorder, Generalized Anxiety Disorder, and Personality Disorder. (*R. at 519.*) This evidence demonstrates a reasonable probability that a severe impairment exists, warranting further development of the record regarding Plaintiff's mental impairment. *See Sanchez v. Apfel*, No. 99-2236, 210 F.3d 390 2000 WL 376616 at *3 (10th Cir. April 13, 2000) (unpublished) (stating that a "diagnosis of major depression triggered the ALJ's duty to further develop the record concerning that impairment," and remanding to the ALJ to order a consultative examination); *see also Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) (remanding to ALJ to further develop the record regarding claimant's depression because the record included a diagnosis of depression).

The Court finds that this case is distinguishable from other cases where an ALJ correctly decided not to order a CPE, because, in those cases, the evidence did not include diagnoses of depression or evidence of more than mild limitations that could be related to that diagnosis. *See, e.g., Barrett*, 340 Fed. Appx. at 487 (rejecting claim that the ALJ should have further developed record regarding claimant's mental impairment when the evidence showed that claimant's depression was controlled by medication and resulted only in mild restrictions); *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (rejecting claim that the ALJ should have further developed the record where the record included findings that claimant's mental impairment resulted only in mild restrictions of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace); and *Hawkins*, 113 F.3d at 1165 (denying

claimant's contention that the ALJ should have ordered a consultative mental examination because the record contained no objective medical tests to verify claimant's depression, and the record contained an opinion from a psychiatrist that the claimant suffered from no medically determinable mental impairment).

The Court rejects Defendant's contention that Plaintiff's counsel failed to indicate that the record was incomplete without the CPE. [*Doc. 24* at 5 and 8]. To the contrary, Plaintiff's counsel requested a CPE for Plaintiff in a letter dated September 20, 2007 [*Doc. 25-2* at 1], and in a letter dated February 1, 2010 (*R. at 503-05*). The Court also rejects Defendant's contention that the ALJ properly considered and denied Plaintiff's request for a CPE. [*Doc. 24* at 8-9]. In his decision, the ALJ merely states that Plaintiff "has not been under the care of a mental health care professional and reported a great deal of external stressors related to financial difficulties prior to his [DLI]." (*R. at 30.*) This statement does not show that the ALJ considered the medical records indicating Plaintiff's history of depression and anxiety prior to Plaintiff's DLI in the ALJ's decision not to order a CPE. The Court also finds that the Appeals Council's statement that Dr. Morgan's psychological evaluation consisted of information from a time period after Plaintiff's DLI (*R. at 2 and 4*) is incorrect because Dr. Morgan considered Plaintiff's mental health history going back prior to his DLI, and concluded that Plaintiff "has been disabled and unable to work beginning at least in September of 2007 and continuing to the present date." (*R. at 519.*)

Finally, the Court rejects Defendant's contention that the ALJ was not required to further develop the record regarding Plaintiff's mental impairment because Plaintiff did not allege anxiety or depression as impairments when he applied for benefits. [*Doc. 24* at 7] (citing (*R. at 139*)).

11

While Plaintiff did not list depression or anxiety in his initial application, his counsel requested a CPE in a letter dated just two months after Plaintiff applied for benefits. *See* [*Doc. 25-2* at 1]. In addition, Plaintiff spoke about his depression at the hearing, and testified that he had suffered from depression for "the last three to four years," and had been taking medication for his depression and anxiety for the last ten to twenty years. (*R. at 58.*) The Court finds that the record contains sufficient information to alert the ALJ that Plaintiff may be suffering from a mental impairment and the need to develop the record on that issue. *See Sanchez*, 2000 WL 376616 at *2-3 (finding that the ALJ should have developed the record regarding the claimant's alleged mental impairment, even though the claimant did not raise depression initially when applying for social security benefits). For these reasons, the Court finds that the ALJ committed legal error in failing to develop the record regarding Plaintiff's depression and anxiety, and the case should be remanded for the ALJ to order a CPE and follow the proper procedures for evaluating Plaintiff's alleged mental impairment.

### B. The ALJ's Consideration of Plaintiff's Treating Physician's Opinions

Next, Plaintiff contends that the ALJ failed to evaluate the medical opinions of Plaintiff's treating physician, Dr. Sautter. [*Doc. 20* at 10]. Plaintiff states that the ALJ erroneously concluded that "there are no treating source opinions in the record for the period prior to the date last insured" (*R. at 32*), even though the record included opinions from Plaintiff's treating physician, Dr. Sautter (*R. at 397-99*). [*Doc. 20* at 10]. Defendant responds that the ALJ properly considered the medical evidence and opinions in the record, and that Dr. Sautter's medical assessments were not treating source opinions for the period prior to the DLI because they were conducted on March 13, 2009. [*Doc. 24* at 8-9].

"When evaluating the opinion of a treating physician, the ALJ must follow a sequential analysis." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir.2007). First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Id.* (citations omitted). If the answers to these questions are "yes," then the ALJ "must give the opinion controlling weight," but if the treating physician's opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as: the length, frequency, nature, and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization; and other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(d). Ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.2004) (citation and internal quotation marks omitted).

Here, the ALJ failed to consider Dr. Sautter's opinions contained in his Medical Assessments of Ability to do Work-Related Activities (Physical) and (Non-Physical) at (*R. 397-99*). Defendant does not dispute that Dr. Sautter was Plaintiff's treating physician, but contends that his March 13, 2009, assessments related only to Plaintiff's capabilities on that date. [*Doc. 24* at 10]. The Court finds that this argument is without merit. First, the forms used by Dr. Sautter directed

him to consider Plaintiff's "medical history and the chronicity of findings as from 2006 to the current examination." (*R. at 397* and *399*.) Second, even though the records include consideration of Plaintiff's health after Plaintiff's DLI, that does not mean that the ALJ can reject them outright based solely on their timing. *See Andersen v. Astrue*, No. 05-4305, 319 Fed. Appx. 712, 722, 2009 WL 886237 (10th Cir. April 3, 2009) (unpublished) (holding that "the ALJ's rejection of [treating source] opinions based on their timing is insufficient," and explaining that "the ALJ could make inferences about the progression of Mr. Andersen's impairment" from those records); *see also Stutsman v. Astrue*, No. CIV-09-142-SPS, 2011 WL 1311709 at *3 (E. D. Okla. March 31, 2011) (unpublished) (finding that evidence of an impairment *after* the termination of insured status "may be relevant to the existence or severity of an impairment arising *before* termination") (quoting *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984)). As one of Plaintiff's treating physicians, the opinions expressed by Dr. Sautter as to Plaintiff's functional limitations were entitled to controlling weight if they were well-supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with other substantial evidence in the record, or, if they were not entitled to controlling weight, the ALJ was required to analyze the proper weight to give them by applying the factors provided in 20 C.F.R. § 404.1527(d). *See Hamlin*, 365 F.3d at 1215 ("An ALJ must evaluate every medical opinion in the record . . . although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.") (citation omitted). The ALJ did not perform this analysis, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

### C.  The ALJ's Hypothetical Question to the VE

Finally, Plaintiff contends that the ALJ erred because he relied on the VE's testimony regarding what jobs Plaintiff would be capable of performing, but the hypothetical question posed to the VE at the hearing did not include the physical and non-physical limitations identified by Dr. Sautter.  An ALJ must include impairments that are supported by the record in his or her hypothetical questions to a VE.  *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) ("[T[he ALJ's failure to include in his hypothetical inquiry to the vocational expert *any* limitation in this regard violated the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record.") (citations omitted).  The hypothetical posed to the VE in this case was for an individual capable of work at a light exertional level with the following additional limitations: "occasionally climb ramps and stairs, never climb ladders or ropes, can occasionally bend over, can occasionally hold things in both hands, and can occasionally handle and finger bilaterally."  (*R. at 72*.)  The ALJ's hypothetical to the VE did not include Plaintiff's history of depression, anxiety or suicidal thoughts.  The Court has already found that this case should be remanded so that the Commissioner can further develop the record regarding Plaintiff's alleged mental impairment and determine what weight to give Dr. Sautter's opinions.  Because Plaintiff's RFC may be amended based on this additional evidence, the Court finds that it is unnecessary to determine whether the hypothetical posed to the VE based on Plaintiff's current RFC is sufficient.  The Court directs the Commissioner on remand to include limitations that are supported by the supplemented record in his amended RFC and, if a second hearing is held, in his hypothetical question to the VE.

## VI.  Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to further develop the record regarding Plaintiff's depression and anxiety, and to determine the weight to be given to Dr. Sautter's medical opinions, as set forth above.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision (Doc. 19)* is **GRANTED** and the decision of the Commissioner is **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*/s/ Lourdes A. Martínez*
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**